SCINA HARRIS v. I. W. MARSHALL, et al.

Western Section. July 31, 1928.

No petition for Certiorari was filed.

510

William L. Terry, of Memphis, for appellee.

O. Floyd Mathis and D. B. Puryear, both of Memphis, for appellant.

OWEN, J. The complainant and defendant, I. W. Marshall, are colored people and residents of Memphis, Tennessee. The complainant is a widow, Marshall is a member of the Memphis Bar. The complainant's bill sought to enjoin a suit instituted by Marshall before Ed. H. Bradley, Justice of the Peace, which suit before a justice was an unlawful detainer suit. The complainant, also sought to set aside a deed she had executed to Marshall to a certain house and lot described in the bill, on the ground of fraud and to have an accounting with Marshall for rents received for said house. The complainant alleged that she was an old negro woman past seventy years of age and illiterate, that her husband, who died a few days before she executed the deed to Marshall, was a pensioner of the U. S. government; that Marshall became her lawyer and adviser immediately after the death of her husband; that the complainant drew $285 as pension money at one time about January, 1926; that the defendant, Marshall, induced complainant to turn over $165 of this pension money to him for complainant's maintenance; that she had been drawing $30 a month as a pension and five ($5) dollars of this or more she turned over to Marshall every month. Marshall answered denying any fraud but insisted that he had paid complainant $1200 for the house and lot, cash. He denied that he had received any of complainant's pension money. The cause was heard before Chancellor Ketchum, upon oral testimony. The Chancellor sustained complainant's bill holding that the deed from complainant to Marshall was obtained by fraud. He held that Marshall had paid off and discharged a lien upon said house and lot and he was entitled to a lien of two hundred twenty dollars and sixty-two ($220.62) cents. The defendant filed a petition to rehear which was overruled, prayed and was granted an appeal to this court and has assigned six errors.

The first three errors challenge the sufficiency of the evidence to sustain said decree in favor of complainant.

The fourth assignment insists that the court erred in setting aside the conveyance to the defendant upon the findings as made.

The fifth assignment challenges the accuracy of the account between the complainant and the defendant, it being insisted that the house, the defendant had erected, cost more than $250 and that the roof upon the original house cost more than $100, and that the defendant was entitled to $75 for his services in making trips to West Point, Mississippi, for complainant and that the court erred in charging the defendant with $185 of complainant's pension money.

The sixth assignment insists that if the complainant is entitled to have the deed rescinded and set aside, then, there should be a reference as to the account between the parties; because the proof was presented on both sides with the sole idea of attacking on the one hand and defending on the other the deed made by complainant to defendant and the record does not contain sufficiently complete proof that an account can be fairly stated by the court.

Chancellor Ketchum, in sustaining complainant's bill, said:

"As shown in findings of fact filed herewith, I find that Marshall obtained the deed from Scina Harris by fraud. She was an ignorant and illiterate negro woman, utterly inexperienced in business, distressed on account of her husband's death, and trusted Marshall implicitly. She sought his advice as her attorney, and employed him to get her pension, and to look after all of her affairs. He had her sign numerous papers in making the application for the pension, and told her she would have to sign some papers to make him administrator and guardian.

"The proof warrants the conclusion that Marshall set about to get a deed to this property, and for more than a year after he got a deed, the complainant remained in possession, and it was only when he bought the unlawful detainer suit to evict her did she learn that she had given him a deed.

"Upon the facts, I find that the deed was obtained by fraud, and should be cancelled and set aside. On a settlement of accounts between the parties, I find that Scina Harris is indebted to Marshall in the sum of $231. Marshall, on the other hand, has placed an encumbrance on the property amounting, according to his testimony, to $110. Scina will assume the payment of this encumbrance, and will pay to Marshall the difference of $121.

"The relationship of attorney and client existed between Marshall and Scina Harris, and he owed to her the utmost faith in his relations to her. The proof in this case shows that he has grossly imposed upon her.

"In Cooper v. Bell, 27 Tenn., page 142, the court say:

" 'The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned, and the courts jealously hold him to the utmost good faith in the discharge of his duty,

"And in Bank v. Hornberger, 44 Tenn., 572, the court say:

"The relation he (the attorney) bears to the client implies the highest trust and confidence. The client lays bare to his attorney his very nature and heart, leans and relies upon him for support and protection in the saddest hours of his life, knowing not which way to go to attain his rights, he puts himself under the guidance of his attorney and confides that he will lead him aright."

"And, in Starr v. Venderberg, 9 Johnson (N. Y.), 952, quoted with approval in Bank v. Hornberger, the court say:

" 'The court from general principles of policy and equity will always look into the dealings between attorney and client, and guard the latter from any undue consequences resulting from a situation in which he may be supposed to stand unequal.'

"Marshall's conduct in his dealings with his client, Scina Harris, does not measure up to the standard of this requirement.

"A decree will be entered cancelling the deed from Scina Harris to Marshall, charging her with the sum of $121, for which Marshall will have a lien on the property. Marshall will be taxed with the costs.

"M. C. Ketchum, Chancellor."

The relation of attorney and client is established in this case. The rule of law is different where such a relation exists as would be applicable if the complainant and defendant were on an equal footing. This court in Hutchinson v. Crowder, 8 App. Cas., 114-119, said:

"To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing not only that he used no undue influence, but that he gave his client all of the information and advice which would have been his duty to give if he himself had not been interested and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

"Owing to the confidential and fiduciary relation between an attorney and his client, and to the influence of the attorney over his client, growing out of that relation, courts, of law, and especially of equity scrutinize most closely all transactions between an attorney and his client. To sustain a transaction of advantage to himself with his client, the attorney has the bur-

'den of showing, not only that he used no undue influence, but that he gave his client all the information and advice which would have been his duty to give if he himself had not been interested and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." Hutchinson v. Crowder, 8 App. Cas., 114-119, quoting 4 Cyc., 960.

We find as a fact, that in a few days after complainant buried her husband, she was induced to go to the office of the defendant to see about getting a pension. The complainant at that time, was sick and in a destitute condition financially, she wanted to borrow some money on her place. The defendant loaned her a few dollars, probably two dollars. At the time during the pendency of her application for a pension, the defendant advanced the complainant about $5 per month, this was during March, April and May. On the first of June he induced the complainant to sign a warranty deed to the house and lot, in controversy, for a stated consideration of $1200 cash. The complainant received no money on the day she executed and acknowledged the deed. Marshall testified that the complainant came back to his office early on the morning of June 2nd, the day following the execution of the deed, that he then and there in his office gave the complainant eight one-hundred-dollar bills and one hundred dollars in smaller bills; that he had gotten these one-hundred-dollar bills from a dope peddler known as, "Ten-Dollar Jimmy," and that "Ten-Dollar Jimmy" was at that time, in the Federal Penitentiary at Atlanta, Georgia, and that he received all this money from "Ten-Dollar Jimmy" for securing a bond for Jimmy. Marshall further testified that he had three bank accounts at that time naming three banks in Memphis, Tennessee; that he would get a statement from the banks as to his account or get passbooks showing his balances; this he failed to do. Marshall's testimony cannot be believed. It has no ring of sincerity or truthfulness in it. He took advantage of the confidence or the faith that his client had in him and by his fraudulent act Marshall induced the complainant to sign the deed to the lot, in controversy. In a very few weeks after Marshall had procured this deed he had placed two mortgages on this property. The proof as to what Marshall had paid out for complainant is vague and indefinite; and as to what complainant had paid Marshall is also vague. We are of the opinion that Marshall received more of complainant's pension money than the Chancellor charged him with but the complainant has not appealed. The Chancellor was rather liberal in crediting Marshall with the accounts stated between the parties. Marshall has no reason to complain of the action of the Chancellor

514

in the account stated between the parties. We are of the opinion that upon a reference to take more proof, the defendant would not be benefited by a remand of this cause. We find no error in the decree of the lower court. All the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed; the defendant and his surety on appeal bond will pay all the costs of the cause, including the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.