RONALD COLEMAN and Wife, DELORES JUNE COLEMAN, Complainants, v. WILLIAM K. MOODY et al., Defendants.—372 S. W. (2d) 306.

Western Section at Jackson. July 31, 1963.

Certiorari Denied by Supreme Court November 6, 1963.

140

John S. Porter and Leland Carter, Memphis, Burch, Porter & Johnson, Memphis, of counsel, for complainants-appellants.

Hal Gerber, Memphis, Gerber & Gerber, Memphis, of counsel, for William K. Moody, defendant-appellant.

BEJACH, J. This cause involves cross appeals of Ronald Coleman and Delores June Coleman, his wife, and William K. Moody. Ronald Coleman and Delores June Coleman, his wife, were complainants in the lower court and appeal from the decree of the Chancery Court because of refusal of that court to disallow any fee in favor of William K. Moody, and because, in the accounting, the court allowed William K. Moody credit for payments in excess of $3,500 made to Charles W. Olita and Home Equipment Co., from funds of complainants, for repairs to property at 240 N. Waldran Street, Memphis, Tennessee. William K. Moody, who was defendant in the lower court, appeals from the decree of that court because it rendered judgment against him in the sum of $8,750.92 in favor of complainants Ronald M. Coleman and Delores June Coleman. For convenience, these parties will be referred to in this opinion, as in the lower court, as complainants and defendant, or called by their respective names. Numerous other parties, as listed above, were made defendants to the bill filed in the lower court, but none of them, except perhaps Home Equipment Company and Charles W. Olita, on the appeal of complainants, are before this court on this appeal. Complainants' bill was dismissed as to some of these defend-

ants, and decrees were rendered as to the other defendants from which no appeals have been taken.

Complainants' bill was filed June 16, 1960 seeking primary relief against defendant William K. Moody, the Home Equipment Company, and Charles W. Olita. On account of incumbrances on real property involved, E. Ralph Crockett and S. Taylor Beare, Sr., Trustees, the First National Bank of Memphis, and Carl A. Robinson, Trustee, and Dr. F. W. Whitehurst were made defendants. The Poor Sisters of St. Francis Seraph of the Perpetual Adoration, d/b/a St. Joseph's Hospital, the Methodist Hospital, Dr. Leon Hay, Dr. W. A. Rentrop, and Dr. J. R. Shelton, were made parties defendant because of their claims for hospital and medical expenses against the complainants as well as against the defendant, William K. Moody. A decree was entered in favor of the two hospitals, from which no appeal has been taken. Drs. Hay, Rentrop, and Shelton filed cross bills against defendant Moody, which cross bills were dismissed and no appeal has been taken. Their cross bills against complaints were sustained.

The original bill alleges that William K. Moody, as their attorney, had represented the Colemans in a suit for personal injuries which was settled for $52,500, for which services he charged and received a fee of $17,500 (one-third of the amount recovered); that, thereafter he wrongfully withheld their money which he misused and mismanaged by purchasing an apartment house at 240 N. Waldran Street, Memphis, Tennessee for $26,000, upon which he made a down payment of $5,755.45, and by paying to the Home Equipment Company $14,600 for repairs to that property without complainants' knowledge or

consent; that he was a trustee of complainants' funds, which trust he had violated; and that because of such violation he should be required to forfeit his fee for his previous service. Discoveries and an accounting were prayed for in the bill.

Defendant Moody's answer denies all charges of fraud and misconduct on his part. It avers that he held complainants' money at their request and paid it out on their order and for their benefit on contracts which they had made. He tendered with his answer the balance in his hands of $5,043.66. His amended and supplemental answer, if accepted at its face value, accounts for the full amount of $52,500 recovered for complainants.

An enormous record consisting of eight volumes and containing 1,381 pages has been sent up in this case. This record contains evidence adduced at the hearing before the Chancellor and a jury and also evidence presented on the reference ordered after the jury trial. A jury trial was not demanded by either of the parties, but was ordered by the Chancellor on his own motion.

After a trial, which according to a statement in one of the briefs, lasted five days, the following issues of fact were submitted to the jury, and its verdict rendered thereon, as follows:

"I

"Did the complainants enter into a written employment contract with the defendant, William K. Moody, for a contingent fee of one-third of any recovery by means of suit or settlement?

"Answer 'Yes' or 'No'                    No

144

"If you answer to Issue No. I is 'Yes', it is not necessary that you answer Issue No. II, but you will answer the succeeding issues unless otherwise indicated. If your answer to Issue No. I is 'No', then you will answer Issue No. II and, unless otherwise indicated, you will answer the succeeding issues.

## "II

"What is fair and reasonable compensation for the services rendered the complainants by the defendant, William K. Moody?

"Answer in dollars and cents:      $13,125.00

## "III

"Was the defendant Moody, by agreement with the complainants, a mere custodian of the funds of the complainants disbursing these funds only on order of the complainants?

"Answer 'Yes' or 'No'                    No

## "IV

"Did the complainants do their own contracting with the Home Equipment Company for the making of the repairs to the property at 240 N. Waldran?

"Answer 'Yes' or 'No'                    Yes

"If your answer to Issue No. IV is 'Yes', it is not necessary that you answer Issues No. V, VI, VII and VIII, but you will answer Issue No. IX. If your answer to Issue No. IV is 'No', then you will answer the remaining Issues, unless otherwise indicated.

## "V

"Was the defendant, Moody, authorized by the complainants to make the expenditures in excess of $4,000.00 which were made for repairs to the property at 240 No. Waldran?

"Answer 'Yes' or 'No'  ———

"If your answer to Issue No. V is 'Yes', it is not necessary that you answer Issues No. VI, VII and VIII, but you will answer Issue No. IX. If your answer to Issue No. V is 'No' then you will answer the remaining Issues.

## "VI

"What amount in excess of $4,000.00, if any, was the defendant, Moody, authorized by the complainants to expend in repairs to the property at 240 No. Waldran?

"Answer in dollars and cents, or by the use of the word 'None'.  ———

## "VII

"Did the defendant, Charles W. Olita, president of Home Equipment Company, have knowledge that the defendant, Moody, was making the expenditures for repairs which had not been authorized by the complainants?

"Answer 'Yes' or 'No'  ———

## "VIII

"Was the property at 240 No. Waldran first shown to the complainants after January 15, 1960, the date of the deed to them?

"Answer 'Yes' or 'No'  ———

## "IX

"Did the defendant, Moody, have knowledge that W. L. Aste was making a profit of $1,000.00 from the complainants in the transfer to them of the property at 240 No. Waldran?

"Answer 'Yes' or 'No'"          <u>Yes.</u>"

From the evidence introduced, as well as from statements made in the briefs of counsel, the following facts appear:

William K. Moody is an attorney practicing law in Memphis, Tennessee. At the time of the trial he was 43 years of age, married, with two children. In August or September, 1958, defendant agreed to represent complainants in their claim for personal injuries received in June 1958. There is a dispute as to the amount of his compensation. He claimed that he had a written contract for a contingent fee of one-third of any amount recovered or received in settlement, but that he had lost or misplaced such contract. The jury found as a fact that there was no written contract; but, it is clear from the record that complainants knew and understood that defendant's fee was to be one-third of any amount recovered and that they acquiesced in such fee after settlement had been made. Defendant claims that after the settlement he held complainants' money at their request. Complainants deny this; but, in any event, for some time after the settlement defendant did retain possession of complainants' share of the settlement, the proceeds of which were deposited in an account known as "Moody Agency", and, from time to time, he disbursed various sums to complainants or in payment for purchases made by them. The draft in payment of the settlement of

complainants' claim in the sum of $52,500 was payable to the order of Ronald M. Coleman, Delores June Coleman, William K. Moody and Louis Peiser, and same was endorsed by all of them before it was cashed and deposited in the Moody account. Louis Peiser, a Memphis lawyer, had been associated with defendant Moody in the investigation and prosecution of complainants' claim, and his name had been signed to the declaration filed. The draft for $52,500 was delivered January 4, 1960.

Mrs. Coleman indicated an interest in buying a home, and looked at one place which could be purchased for something in excess of $5,000. Defendant, Moody, discouraged the purchase of that place and recommended that the Colemans purchase income producing property. He had a friend in the real estate business. W. L. Aste, who offered to the Colemans a four apartment building at 240 N. Waldran Street, Memphis, Tennessee for $26,000 Moody recommended purchase of this property at that figure, and the Colemans agreed. It seems that Aste had been dickering with the owner of the property, a Mrs. Conway, for the purchase of the property for $25,000. When the Colemans agreed to purchase for $26,000, Aste obtained a check from Moody for $5,755.45, representing the down payment, from which he subtracted $1,000 and paid the balance of $4,755.45 to Mrs. Conway. The remainder of the purchase price was represented by a mortgage which complainants assumed. The deed to the property was made by Mrs. Conway direct to the Colemans. This transaction appeared on the settlement sheet, which was prepared at the closing by Mr. Charles Nearn, a copy of which was delivered to Moody but not to the Colemans. Mr. Nearn was at that time associated with defendant Moody under the

firm name of Moody, Nearn and Livingston. Defendant Moody testified that he, Nearn and Livingston were not in fact a partnership, but were merely associated for the purpose of dividing office expenses. Moody disclaimed knowledge of the $1,000 profit made by Aste; but, in that situation, it is our opinion that any knowledge acquired by Nearn must be imputed to Moody.

About ten days after the purchase of the apartment building, defendant Moody introduced the Colemans to Mr. Charles W. Olita, president of Home Equipment Company, a corporation of which Moody was a director and Secretary. Moody recommended Olita and the Home Equipment Company for the repair work on the apartment building contemplated by complainants. According to his testimony, he recommended that not more than $3,000 to $4,000 be expended on repairs and improvements of the property. Complainants testified that Olita agreed to do the work on a cost plus 10% basis, with a top limit of $4,000. Olita claimed that he was to receive cost plus 15%, with no limit. At any rate, Moody continued to disburse funds of complainants to the Home Equipment Company until a total of $14,600 had been expended. No proper vouchers were presented by the Home Equipment Company to justify such payments, and the proof shows that at the same time Olita was doing the work for the complainants on Waldran, he was also repairing the home of defendant Moody on Peabody Avenue in Memphis, Tennessee. No time sheets or cost accountings were presented, and apparently no compensation was paid by Moody for the work at his home. In addition, Olita suggested to complainants that a title I FHA Loan to cover the cost of the repairs be made, which was done. Thereafter, Moody made an additional

payment from complainants' funds in the sum of $800.00, bringing the total of payments to Olita and the Home Equipment Company up to $18,100.

After the jury's verdict, defendants moved for a new trial, which motion was overruled. The Chancellor approved the jury's verdict and a reference was ordered to the Clerk and Master. The reference ordered the Clerk and Master to take and hear proof, ascertain and report on: I. The reasonable value and improvements and renovation of the premises known as 240 N. Waldran. II. Whether William K. Moody encroached upon funds of the complainants in his hands, and III. To state an account between defendant William K. Moody and the complainants, pursuant to which Mr. Moody was required to account as trustee for moneys of complainants disbursed by him. After an extended hearing, the Master filed his report February 21, 1962 in which he reported, 1. That the value of the improvements to 240 N. Waldran was $13,385.53; 2. That at no time did the balance in the account of Moody Agency, between January 1, 1960 and May 31, 1960 fall below a sum sufficient to cover the balance due complainants; and 3. An account was stated between complainants and Moody disclosing the receipt by Moody of $52,720 and the expenditure by him of $52,863.69, showing an overpayment of $143.69. In his report, the Master allowed defendant Moody's claim for a fee of one-third of the amount recovered for the Colemans, or $17,500. Numerous exceptions were filed to the Master's report by both complainants and defendants, including Olita and the Home Equipment Company. In addition, complainants moved to disallow any fee in favor of defendant Moody. The Chancellor denied the motion of complainants to disallow Moody's fee in its

entirety, but sustained the exeception which objected to the Master's allowance of a fee in the sum of $17,500. The Chancellor fixed the fee, as had the jury, in the sum of $13,125, or one-fourth of the amount of the settlement. A final decree was entered June 28, 1962. This decree awards to complainants a recovery against William K. Moody and Charles Olita and Home Equipment Company, Inc., jointly and severally, in the sum of $3,375.92, representing the excess of complainants' money paid by Moody to the Home Equipment Company in excess of the $13,385.53 found by the Master to be the fair value of the improvements added at 240 N. Waldran, after allowing to Olita and Home Equipment Company a profit of 10% thereon. In addition, the final decree awards to complainants a recovery of the further sum of $5,375, composed of $4,375 representing the difference between the fee of $17,500 allowed by the Master, and a fee of $13,125 allowed by the jury and by the Chancellor, plus the $1,000 paid by Moody to W. L. Aste in connection with the purchase of 240 N. Waldran and not turned over by Aste to Mrs. Conway, the seller, making a total recovery against defendant Moody and in favor of complainants in the sum of $8,750.92. The final decree awarded a recovery in favor of St. Joseph's Hospital against complaints in the sum of $4,999.41, in favor of the Methodist Hospital and against them in the sum of $1,369.85, a recovery against them in favor of Drs. Leon Hay and Moore Moore, Jr. in the sum of $2,131, and in favor of Drs. W. A. Rentrop and J. F. Shelton in the sum of $1,246. The final decree orders the Clerk and Master to pay to Leland E. Carter and John S. Porter from the fund paid into court, the sum of $1,000 as a partial fee, which sum shall be credited upon the total fee due them

from complainants, and from the sum remaining to pay the costs incurred in this cause, and the balance to St. Joseph's hospital and the Methodist Hospital in the proportions of 78.4% and 21.6%, respectfully. A lien is also declared in favor of John S. Porter and Leland E. Carter, solicitors for complainant, for any balance of fee due them on any recovery in favor of complainants to the extent of one-third of such recovery, after crediting the sum of $1,000 ordered to be paid from the fund in court. The decree provides that all costs accrued are adjudged against Charles W. Olita, Home Equipment Company, Inc., and William K. Moody, and when such costs are paid, the amount thereof shall be used to further satisfy any unpaid costs in this cause, and the balance distributed to 78.4% to St. Joseph's Hospital and the remaining 21.6% shall be paid to the Methodist Hospital, and said sums credited upon the unpaid portion of the judgments rendered herein in favor of said hospitals, with a provision that in the event said judgments have been fully paid prior to the payment of costs, such excess shall be paid to complainants.

As stated above, both complainants and defendant William K. Moody excepted to the final decree and have prayed and perfected their respective appeals to this court. In this court, as appellants, complainants have filed three assignments of error. These present three contentions, viz., 1. That William K. Moody should be allowed no fee whatever for his services; 2. That it was error for the court to have allowed William K. Moody to take credit for payments in excess of $3,500 made to Charles W. Olita and the Home Equipment Company, Inc. from funds of complainants for repairs to the property at 240 N. Waldran Street, Memphis, Tennessee; and

3. That the lower court erred in allowing compensation to Home Equipment Company, Inc. and Charles W. Olita to the extent of $13,385.53, plus a profit of 10% or $1,338.55. The defendant, William K. Moody, as appellant, has filed in this court eight assignments of error. We deem it unnecessary to separately list these assignments. They complain of issues of fact submitted by the Chancellor to to jury, and also complain because the Chancellor sustained exceptions to the report of the Clerk and Master which had allowed Moody a fee of $17,500, or one-third of the amount recovered for complainants, had allowed him credit for the additional $1,000 paid to W. L. Aste in connection with the purchase of the Waldran Street Property, and had disallowed credits in excess of $14,724,08 found by the Master to be the reasonable value of the improvements added to the Waldran Street property, including a 10% profit for the Home Equipment Company. The questions presented by complainants' assignments of error overlap to some extent the questions presented by defendant's assignments of error. We will, therefore, discuss them together.

After a careful consideration of the voluminous record before us, we have reached the conclusion that disposition of four principal issues is determinative of all material questions presented by this appeal. These four questions are, 1. Whether or not defendant William K. Moody should be charged as a trustee of funds of complainants received by him after settling the personal injury law suit of complainants, and whether or not he breached his duties as such trustee; 2. What, if any, compensation should be allowed to defendant Moody; 3. Whether or not defendant Moody should be allowed

credit for the $13,385.53 found by the Master to be the value of improvements added to property at 240 N. Waldran Street, Memphis, Tennessee, purchased by complainants, plus $1,338.55 profit allowed in favor of Home Equipment Company, Inc., and if so, whether or not such credit should be limited to that amount; 4. Whether or not defendant Moody should be charged with a sum of $1,000 paid out of funds of complainants to W. L. Aste in connection with the purchase of the property at 240 N. Waldran Street.

█ Inasmuch as the jury in this cause was not demanded by either of the parties, but was impanelled by the Chancellor on his own motion, reversal or modification of any part of the final decree entered in the lower court will not require a remand of this cause for new trial. Marron v. Scarbrough, 44 Tenn. App. 414, 314 S. W. (2d) 165.

█ The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned, and the courts jealously hold him to the utmost good faith in the discharge of his duty. Cooper and Keys v. Bell, 127 Tenn. 142, 153 S. W. 844, Ann. Cas. 1914B, 980; Planters' Bank v. Hornberger, 44 Tenn. 541, 572; Harris v. Marshall, 8 Tenn. App. 509; Perry on Trusts and Trustees, 7th Ed. sec. 202; 7 Am. Jur. 2d—Attorneys at Law, secs. 92, 93, pages 105, 106.

█ █ It is the contention of counsel for defendant, Moody, that he was a mere custodian of complainants' funds, and that no trust relationship existed. We cannot agree to this contention. While no case directly in point has been called to our attention, we think the prin-

ciples involved in the authorities cited above are applicable to the facts of the instant case. The relationship of attorney and client being highly fiduciary in character, we think the learned Chancellor properly imposed on defendant in the instant case the burden of justifying all expenditures of complainants' funds in his custody, made by him. One of the most important duties owed by an attorney to his client is to remit to, or account to the client for all of the client's money collected by the attorney.

In the instant case, defendant Moody expended complainants' money recklessly and without obtaining proper authority or requiring adequate vouchers for such expenditures. Particularly is this true in the case of the disbursements made to the Home Equipment Company, Inc. in connection with its work at 240 N. Waldran, and the situation is aggravated by the strong suspicion indicated by the evidence that defendant may have been profiting personally from his transactions with the Home Equipment Company, Inc. and its president Charles W. Olita. In any event, defendant Moody was an officer and director of Home Equipment Company, Inc. and, acting in his fiduciary capacity as attorney for complainants in dealing with that corporation, his transactions are subject to careful scrutiny by the courts. Fletcher's Cyclopedia of Corporations, sec. 918. Under all the facts and circumstances of the instant case, we think defendant Moody must be treated as a trustee of complainants' funds retained by him and held to all obligations as such, in connection with his disbursement of complainants' funds.

We take up next the question of what, if any, compensation defendant Moody is entitled to have credited

to him in his accounting with complainants. Able counsel for complainants takes the position that the relationship of attorney and client, as between complainants and defendant Moody, began when he was employed to prosecute their personal injury claim and continued as one uninterrupted transaction from that time until the present suit was filed. Based on that assumption, it is contended that Moody's breaches of trust have caused him to forfeit all right to compensation, and, consequently, that he must account to complainants for the entire sum of $52,500 recovered for their benefit, without any deduction of compensation for himself. We concur in the ruling of the learned Chancellor that the facts of this case do not justify such forfeiture. From the Chancellor's opinion disallowing this contention, we quote as follows:

"There is no question but that, generally, if an attorney is guilty of malfeasance or breach of faith against his client during the purported performance of professional services, he will forfeit, and may not recover, compensation from his client for such pretended personal services. However, this is not the question and issue here presented, for, prior to the breaches of trust found to exist by the Court, Moody had previously earned the compensation here sought to be forfeited. Accordingly, the issue and question is unusual and very limited;

"The complainants have cited the cases of Duffy v. Colonial Trust Co. (Pa. 1926) [287 Pa. 348], 135 Atl. 204 [49 A. L. R. 406]; Terry v. Bender (Cal. 1956 [143 Cal. App. (2d) 198], 300 P. 2d 119; In re Conrad (Mo. 1937) [340 Mo. 582], 105 S. W. (2d) 1; Allen v. Moushegian (Mass. 1947) [320 Mass. 746],

71 N. E. 2d 393; Holcomb v. Steele (1958), 47 Tenn. App. 704 [342 S. W. (2d) 236]; and Ingersoll v. Coal Creek Coal Co. (1906), 117 Tenn. 263 [95 S. W. 178, 9 L. R. A., N. S., 282].

"In the first five cases above listed and cited by the complainants, the malfeasance involved occurred during the purported performance of the very professional services for which compensation for the unfaithful, remiss or culpable attorney was sought or claimed. In the case of Ingersoll v. Coal Creek Coal Company, attorneys who had solicited employment and representation from their clients, and were employed as a direct result of this solicitation, were denied compensation from parties who had settled with such clients without knowledge of the attorneys. The Court does not consider these cited cases are sufficiently factually similar to the issue presented as to be particularly persuasive.

"The cases cited by the defendant Moody skirt about the issue presented, but never directly hit it. The defendant Moody cites cases which deal with the question of when an attorney's employment commences (Stone v. Bank of Commerce, 174 J. S. 412 [19 S. Ct. 747, 43 L. Ed. 1028]), when is an attorney rendering professional services as opposed to a personal service (Stout v. Smith, 98 New York 25), and when the services of an attorney are terminated (Dooley v. Dooley (1882), 77 Tenn. 306; Sandall (Utah) v. Sandall [57 Utah 150], 139 [193] P. 1093 [15 A. L. R. 620]; and Hey v. Simon (Ky. 1906), 93 S. W. 50).

"These cases are not considered controlling in this cause. The case of Tritsch v. City of Covington, cited as 177 S. W. 518, appears to be erroneously cited.

"With relation to the general rule attempted to be above stated by this Court, it appears that Moody could forfeit no compensation for professional services rendered after the settlement of the complainants' personal injury claim, for he received none and is now claiming none.

"This Court concludes that the above stated breaches of trust found against Moody, having occurred subsequent to the handling and settlement of complainants' personal injury claims and being only indirectly connected therewith, may not relate back to the professional services rendered prior to the breaches of trust and deprive the defendant Moody of that compensation for such services which he had previously earned. The fact that Moody retained in his possession the moneys of the complainants, though this retention afforded the opportunity for the breaches of trust, is considered so indirectly connected with the professional services rendered as not to alter the conclusion stated."

■ The Chancellor then found, as had the jury, that $13,125, or one-fourth of the amount recovered for complainants, constituted reasonable compensation for his services and allowed credit for that amount. The Chancellor had submitted to the jury an issue of whether or not complainants had entered into a written contract of employment with defendant William K. Moody for a contingent fee of one-third of any recovery, with in-

struction that if the jury answered that question "Yes", the question as to amount of reasonable compensation need not be answered. The jury answered the question "No", and then fixed the amount of reasonable compensation at $13,125. We think this issue was improperly submitted to the jury. The real issue, which was material, was not whether Moody had a written contract for one-third but whether he had *any* contract for one-third. True, he contended that he had had a written contract to that effect which he had lost or misplaced; but, even if he were mistaken as to having had a written contract, he was entitled to retain a fee of one-third if complainants agreed to that amount. The issue, as presented to the jury, was, in our opinion, a false issue. The Clerk and Master found that Moody was entitled to $17,500, or one-third of his recovery, and we agree with that, rather than with the ruling of the Chancellor and the jury. Mr. Louis Peiser, a member of the Memphis Bar, who was associated with defendant Moody in the investigation of and filing of suit on complainants' personal injury claim, testified unequivocally that the fee was to be one-third, and that it was so understood and agreed to by complainants.

From the testimony of complainant Delores June Coleman, we quote as follows:

"Q But, at any rate, you agreed to take that ($52,500) amount?

"A Yes, sir.

"Q And that was in December of 1959?

"A Yes, sir.

"Q Did you have some discussion with him about his fee at that time?

"A No, sir.

"Q None at all, is that right?

"A That's right.

"Q Didn't you know that he was going to charge you for his services?

"A Not until we signed the draft, no.

"Q I am sorry, I didn't hear you.

"A Not until we signed the draft did we know what his fee was.

"Q And where did you sign the draft?

"A In Mr. Moody's office.

"Q Did you also sign the release at that time?

"A Yes, sir.

"Q And your husband signed both documents?

"A Yes, sir.

"Q Did you have some discussion with him at that time about the fee?

"A No. He just said that his fee was one-third, which would be $17,500.

"Q And that was agreeable with you?

"A Not necessarily. I thought it was pretty high.

"Q Well, did you object to it?

"A Well, I asked Mr. Moody, under the circumstances, that to my understanding lawyers were sup-

posed to get a fourth, if it was settled out of court, and he stated that it was such a large settlement that $17,500 would be fair. Since he had quite a bit of leg work to do on it, and he also stated at that time that he would get Ronald a white collar job in the Post Office, if I would help with the Republican Party. * * *

"Q Well if you thought that 25% was the most that you should pay, why did you agree to pay 33 1/3%?

"A Well Mr. Moody said he was going to make us independently wealthy. He said he was going to get Ronald a good job at the Post Office where he didn't have to stand on his feet all day with his leg as bad as it is, and things like that, and I figured—well, I guess it was justified, if he was going to help us in that way."

On the same subject, Complainant Ronald Coleman testified as follows:

"Q Now, when did you first see—before I get to that, when did you first find out what Mr. Moody was going to charge you and your wife for representing you in this damage suit?

"A The day we went up to sign the draft.

"Q What took place on that day?

"A We went to Mr. Moody's office and he showed us the draft for $52,500, and he told us that his fee would be one-third, which is about $17,500.

"Q Did he give you any cash money on that day?

"A Yes, sir, he gave us $1,000."

■ ■ In the face of that testimony, and knowing as we do, judicially, that contingent fees of one-third are normal and not unusual in this area, we conclude that defendant Moody should have been allowed credit for a fee of $17,500 in his accounting with complainants. This will make a difference of $4,375 in his favor, and the decree against him should have been reduced by that amount.

■ ■ We take up next the question incident to charging complainants with $14,724.08, consisting of $13,-385.53 found by the Clerk and Master to be the value of added improvements at 240 N. Waldran Street, plus 10% profit in favor of Home Equipment Company in the sum of $1,338.55. As to $13,385.53 of this, there is a concurrent ruling by the Clerk and Master and the Chancellor, which has the effect of a jury verdict. Section 664 Gibson's Suits in Chancery, 5th Ed. There was ample evidence to justify such ruling, and consequently we could not change this item, even if we were disposed so to do. As to the profit of $1,338.55 added by the Chancellor to the sum of $13,385.53, we think the testimony justified the addition of this item. Complainants themselves testified that they had contracted with Mr. Olita for the Home Equipment Company, Inc. on the basis of cost plus a 10% profit. Mr. Olita testified that it was cost, plus 15%, but in allowing only 10%, the Chancellor gave to complainants the benefit of their version of the transaction. In addition, this is an equity cause, and complainants have come into court bound by the equitable maxim, "He who seeks equity must do equity." In that situation, with a conclusive finding of fact that $13,385.53 in value has been added to their property, complainants would be unjustly enriched to the extent that any amount less than

$13,385.53 might be charged against them. This would be inequitable on its face. We conclude, therefore, that the charge of this item of $14,724.08 against complainants was just and proper.

■ Finally, we will take up and dispose of defendant's contention that he should be credited with the additional $1,000 paid to W. L. Aste, in connection with the purchase for complainants of the property at 240 N. Waldran Street. He testified that he did not know that Aste was making an additional profit of $1,000 over and above commissions which he received from the seller, and did not know that this was reflected in the settlement sheet which was delivered to him. The settlement sheet was, however, prepared by Mr. Charles Nearn and the facts about the $1,000 transaction were known to him. Ostensibly, Nearn was a partner of defendant Moody. By operating under the firm name of Moody, Nearn, and Livingston, they held themselves out to the public in that capacity, and must take the consequences. In that situation, we think any knowledge had by Nearn must be imputed to Moody, and in thus improperly disbursing the $1,000 of his client's funds, we think he should be held to account for same.

■ All of the assignments of error filed by complainants in this court will be overruled, and all of those filed by defendant, William K. Moody, except such as question the amount of the decree against him in the lower court, will be overruled.

The decree in favor of complainants Ronald Coleman and Delores June Coleman, and against defendant William K. Moody, in the sum of $8,750.92, will be modified by subtracting therefrom the sum of $4,375, representing

the difference between the amount of the fee allowed defendant Moody and the amount of the fee which we think should have been allowed, thus reducing the decree against him from $8,750.92 to $4,375.92, for which sum a decree may be entered in this court, together with interest thereon, from June 28, 1962, the date of the final decree in the lower court.

The costs of the lower court will remain as adjudged in the lower court. The costs of the appeal will be adjudged two-thirds against defendant William K. Moody and his surety on the appeal bond, and one-third against the complainants, Ronald Coleman and Delores Coleman and the surety on their appeal bond. For convenience in collection and disbursement, and administration in connection with items not appealed from, this cause will be remanded to the Chancery Court of Shelby County.

Avery, (P.J., W.S.), and Carney, J., concur.