James Earl RAY, Plaintiff-Appellant,

v.

Percy FOREMAN, William Bradford Huie, and Arthur J. Hanes, Sr., Defendants-Appellees.

No. 20694.

United States Court of Appeals, Sixth Circuit.

April 29, 1971.

William E. Miller, Circuit Judge, dissented and filed opinion.

Richard J. Ryan, Memphis, Tenn., for appellant; J. B. Stoner, Savannah, Ga., on brief.

Arthur J. Hanes, Jr., Birmingham, Ala., for Arthur J. Hanes, Sr.

Gareth S. Aden, Nashville, Tenn., for Foreman and Huie, John J. Hooker,

Nashville, Tenn., on brief, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., of counsel.

Before McCREE, BROOKS and MILLER, Circuit Judges.

McCREE, Circuit Judge.

James Earl Ray appeals from a District Court judgment dismissing his action for injunctive and declaratory relief against Percy Foreman, William Bradford Huie, and Arthur J. Hanes, Sr.

On March 10, 1969, Ray pleaded guilty in the Shelby County, Tennessee Criminal Court to the murder of Martin Luther King, Jr., and was sentenced to 99 years' imprisonment. Defendant Foreman, a member of the Texas bar, was appellant's attorney at the time of the entry of this plea.

Earlier, from July 5, 1968, while Ray was incarcerated in London, England, until November 11, 1968, he had been represented by defendant Hanes, a member of the Alabama bar. On July 8, 1968, Hanes, Ray, and defendant Huie, a professional writer and resident of Alabama, entered into an agreement under which Huie undertook to prepare a book and other literary material concerning Ray and the King murder with the assistance and cooperation of Ray and Hanes. Huie was given exclusive rights to this material, in return for which Huie agreed to pay Ray and Hanes each 30 percent of his gross receipts from its sale. Ray subsequently assigned portions of his rights under this agreement to Hanes.

After Ray discharged Hanes and hired Foreman, an amendatory agreement was executed on January 29, 1969, under which Hanes relinquished all his rights under the July 8 agreement and all other rights against both Ray and Huie, and acknowledged that he had received payment for his services. In return, it provided:

Author [Huie] and Ray, and each of them do hereby forever release and discharge Hanes from any and all claims, demands, actions and causes of action which they or either of them, but for this release, might now have or hereafter might have against Hanes under or pursuant to said Basic Agreement, the Assignment Agreement or any other agreements or contracts, written or oral, heretofore entered into between said parties or any of them with respect to the subject matter of said Basic Agreement.

Several days later, on February 3, 1969, Ray assigned all his rights under the various contracts to Foreman as the latter's fee. On the day before Ray pled guilty, Foreman wrote him, in part, as follows:

This will shorten the trial considerably. In consideration of the time it will save me, I am willing to make the following adjustment of my fee arrangement with you:

If the plea is entered and the sentence accepted and no embarrasing circumstances take place in the court room, I am willing to assign to any bank, trust company or individual selected by you all my receipts under the above agreement in excess of $165,000.00.

On July 18, 1969, several months after Ray's conviction, he brought this action in the United States District Court. The apparent[1] gravamen of Ray's case is that Hanes, Huie, and Foreman used their positions of trust to impose these contracts on Ray against his will, placed their own financial interests in the contracts ahead of Ray's interests as a defendant, and conspired to violate his right to a fair trial, in violation of the duty imposed on attorneys by Tennessee law, and in contravention of the Civil Rights Act, 42 U.S.C. § 1985. The relief sought is primarily injunctive and equitable: Ray asks for preliminary and permanent injunctions barring defendants "from further exposure of the alleged facts surrounding the slaying of

---

1. The complaint, captioned "petition", does not conform to the Rules of Civil Procedure, see, e. g., Rule 10(b), and it is only with difficulty that the grounds for the cause of action and the basis for jurisdiction can be determined.

Martin Luther King, insofar as such facts affect the petitioner or purport to involve the petitioner with said killing." In addition, appellant seeks a declaratory judgment declaring the several contracts to be null and void. We observe that petitioner does not seek money damages,[2] nor is this an action for release from custody—although some of the allegations in his petition are suggestive of those often made in support of claims of deprivation of effective assistance of counsel.

Two depositions of Ray were taken in the Maximum Security Section of the Tennessee State Penitentiary at Nashville, and a pre-trial order was entered by the District Judge, delineating the issues of fact and of law as follows:

Issues of Fact:

It is agreed that the defendant Foreman does not have a Power of Attorney to act for plaintiff Ray. It is agreed that the Power of Attorney from the plaintiff Ray to the defendant Hanes, which was heretofore given, is now void and of no effect.

The contested issues of fact are:

(a) Were the contracts between the plaintiff and the defendants intended for the benefit of the plaintiff?

(b) Did Hanes and Huie conspire to exploit plaintiff Ray for their own monetary benefit?

(c) Did the agreements between the parties adversely affect the defense of the Ray trial?

(d) Did Foreman pressure Ray into pleading guilty?

(e) Did Ray at all times protest his innocence of the murder charge to the defendant Foreman?

(f) If Ray had testified in the criminal trial, would this have increased or diminished the value of the right to publish the story of Ray as contemplated in the contract?

(g) Did Foreman tell Ray that there had been no executions in Tennessee for murder within the past decade?

(h) Did Huie publish in a national magazine statements purportedly made by Ray which were untrue and which came to Huie by Hanes or Foreman in their respective capacities as attorney for Ray?

Questions of Law:

(a) Did the defendants, or any two of them, violate 42 USC § 1985?

(b) Does the attorney-client relationship cover post guilty plea publication of statements made by a client? If so, is the plaintiff entitled to an injunction against all three defendants?

(c) Can the contract be voided due to fraud in the inducement by virtue of an intent to exploit Ray and by virtue of the attorneys being in the capacity of contracting with their client Ray?

(d) If the addendum to the contract with Foreman is avoided, what is the effect of the release agreement wherein Hanes agreed not to publish information obtained from Ray?

(e) Does the proof support voiding the contracts on any grounds?

(f) Is the plaintiff entitled to an injunction against any defendant on any grounds?

■ Following the presentation of plaintiff's evidence, and after the examination of the depositions, the District Court granted defendant's motion for dismissal under Rule 41(b), Fed.R.Civ.P. That Rule provides, in pertinent part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence,

---

2. Appellant also asked for "such other general relief as the equities of this cause may demand", and the District Court's pretrial order raised as issues of law whether the contract could be voided or the plaintiff granted an injunction "on any grounds". Our examination of the record, however, confirms that the District Court was correct in finding that appellant had not presented evidence which would have justified a recovery in damages, and no argument for such relief appeared in appellant's brief on appeal.

the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

In his oral opinion, delivered at the close of evidence, the District Judge stated:

I can find nothing in the proof to support any sort of conspiracy or prohibited conduct under the Civil Rights Section, Title 42, United States Code, Section 1985. I just don't find that these defendants fit into that section in light of the proof that has been offered.

Obviously, the court was accepting as true, arguendo, all the testimony presented in plaintiff's case in chief, and thus no formal findings of fact were necessary. *Cf.* Wolf v. Reynolds Elec. & Engineering Co., 9 Cir., 304 F.2d 646, 649; 5 J. Moore, Federal Practice, ¶ 41.-12[2], at 1151 & n. 2. Although the language of Rule 41(b) is otherwise, we hold that no such findings need be made when the dismissal is made solely on grounds of legal insufficiency. Any other rule would be an exaltation of form over common sense (although, of course, a District Court clearly may make such findings, and in some cases may prevent the necessity of retrial if it does so). We shall view the District Court's oral opinion as a holding that appellant's proofs, accepted in their most favorable light as true, fell short of presenting a claim on which relief could be granted. We agree with that holding, and affirm the judgment of the District Court.

■ We first consider appellant's claim under Tennessee law on the assumption that diversity jurisdiction was invoked. Apparently his argument is that first Hanes, and then Foreman, fraudulently induced him to enter into these contracts. Our examination of the record confirms the District Court's determination that appellant presented no evidence to support this contention. Nor do we find any evidence that appellant has an action against any of the defendants for failure to perform contractual obligations. Ray expressly released Hanes from all claims arising from the contracts. This release was made for valid consideration—Hanes' relinquishment of any future payments due from Huie which had been assigned to him—and it is axiomatic that a party cannot maintain a contract action against a party to whom he has voluntarily given a full and unconditional release.

■ Nor is there any evidence that Huie or Foreman failed to comply with their contractual undertakings. A careful reading reveals that Huie did not even unconditionally promise to write anything, and he clearly reserved the right to publish only such material about Ray and the King murder as he saw fit, without any obligation to seek Ray's, Hanes' or Foreman's approval. It is not claimed—and appellant's own papers deny—that Huie failed to pay the parties all the money to which they were entitled. Under the contracts complained of, Foreman undertook no specific obligation except to defend Ray, in return for an assignment of all the proceeds from Huie's writing accruing to him—an amount later reduced voluntarily by Foreman. We find no evidence in the record of this appeal to support the contention that Foreman did not live up to this bargain (although, of course, we express no opinion whether plaintiff's contentions might entitle him to an evidentiary hearing in an action for post-conviction relief).

■ Appellant argues that Tennessee law, in cases where an attorney is accused of taking unfair advantage of his client in business dealings, places on the lawyer the burden of going forward with evidence to demonstrate the falsity of

the claim. It is clear that Coleman v. Moody, 52 Tenn.App. 138, 372 S.W.2d 306, 313 (1963), and cases cited therein, do impose a very strict duty on attorneys in such situations. But there is nothing in these cases to shift the burden of going forward—as contrasted with the burden of proof—onto the lawyer. A plaintiff must still initially demonstrate that he has a prima facie case—a burden which appellant here did not carry. Otherwise any former client could, by filing bald allegations, require his quondam attorney to present an entire defense under what is quite properly a very heavy burden of proof.

■ Considering the alternate basis of jurisdiction, we agree with the District Court's conclusion that there was no evidence to support appellant's allegations that he was deprived of his civil rights in violation of 42 U.S.C. § 1985. The only possibly applicable sections of that statute require proof of a conspiracy of two or more persons to deprive another of his constitutional rights, and there is no proof of such a conspiracy here.

In view of our determination that there was no proof of breach or fraudulent inducement or of a conspiracy to violate appellant's civil rights, we need not decide the interesting question whether, under Tennessee law, contracts, of the kind involved here, are void as a matter of public policy on the grounds that they tend to create conflicts of interest between attorney and client and tend to create incentives to undermine the judicial process itself because of the publicity value of sensational tactics and disruptions of trials.

The judgment of the District Court is affirmed.

**WILLIAM E. MILLER**, Circuit Judge (dissenting).

With deference to the views of my fellow judges in this case, I find it necessary to dissent. In my view the attorney-client contracts involved here were pregnant with a potential conflict of interest and were so susceptible of a violation of the strict fiduciary duty imposed upon attorneys, that the burden of going forward with evidence to demonstrate the falsity of the plaintiff's claim was shifted to the defendants. Tennessee law exacts an exceedingly strict standard of conduct from attorneys, creating a fiduciary relationship, as reflected by the early case of Planter's Bank of Tennessee et al. v. Hornberger et al., 44 Tenn. 443, 476–483 (1867), and many later cases. The courts of Tennessee have, to my knowledge, never deviated from this rule. I believe that the rationale of these cases requires us to hold that where a contract concerning an attorney's compensation for legal services is suspect[1] on its face and is challenged by the client, the attorney has the burden of going forward with proof that no misconduct or over-reaching was involved. Ordinarily, and I think here, his own personal explanation should at least be given. Indeed, the majority opinion itself recognizes in its closing paragraph that the contracts here involved may raise a serious question of conflict of interest between attorney and client and "create incentives to undermine the judicial process * * * because of the publicity value of sensational tactics and disruptions of trials." Like the majority, I would not declare the contracts void for these reasons as against public policy, but at least I would require the attorney to remove any suspicion of breach of duty, if he could do so, by making a full disclosure of his representation of his client pursuant to

1. That the contracts now under consideration are "suspect" on their face is obvious from an examination of them. Indeed, under such contracts, it is difficult to see how an attorney could represent his client with that degree of detachment and ob-jectivity required by the high standards of his profession and particularly by the standards imposed by Tennessee law. The contracts are strongly suggestive of an inherent conflict of interest on the part of the defendant attorney.

the contracts. Although for some purposes the questions of burden of proof and the burden of going forward may be regarded as procedural and not substantive, it is obvious that the basic issue here presented concerns itself with the relationship between attorney and client, a matter of substance and vital importance under Tennessee law. The law of that state should apply under the *Erie* and *Guaranty Trust* doctrines. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). I would, therefore, vacate the judgment of the District Court in dismissing the action at the close of the plaintiff's proof and remand it to that court for further proceedings.