**Albert Lewis LEDERER, Petitioner-Appellant,**

v.

**Dan TEHAN, Sheriff, Hamilton County, Ohio, and C. E. Van Curen, Superintendent, Lebanon Correctional Institution, Respondents-Appellees.**

No. 20567.

United States Court of Appeals, Sixth Circuit.

April 15, 1971.

---

------◆------

Bernard J. Gilday, Jr., Cincinnati, Ohio, for petitioner-appellant; Morr & Gilday, Cincinnati, Ohio, on brief.

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, for respondents-appellees; Paul W. Brown, Atty. Gen., Columbus, Ohio, on brief.

Before EDWARDS, McCREE and BROOKS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from the denial of a petition for writ of habeas corpus entered on a stipulated record of facts by a District Judge in the United States District Court for the Southern District of Ohio. Appellant claims that his current imprisonment under sentence for possession of narcotics in the Ohio state courts was the result of a search and seizure which was illegal under the Fourth Amendment to the Constitution of the United States.

This case, as the court was advised at oral argument, has become known as the case of the "Hashish Llama." The llama is an Andean beast of burden which normally carries its load on its back. This llama, however, was a piece of plaster statuary. Its burden was carried internally in packets buried in the base of the statue. The packets proved to contain $300,000 worth of raw hashish. From this summary of the presently admitted facts, it would seem that the Cincinnati park policeman who seized the partially destroyed llama must have been in the proper performance of his duty. But this determination must be made as a matter of law on the basis of the facts known to the policeman *before,* not *after* the seizure of the statue and the hashish it was found to contain. *See* Johnson v. United States, 333 U.S. 10, 15–16, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The District Judge heard this petition on an agreed statement of facts, plus the bills of exception of the hearing on the motion to suppress evidence and the trial of the state court case.

For our purposes, we believe the following portion of the Agreed Statement of Facts will suffice:

"On September 26, 1968, at approximately 7:50 p. m. o'clock, Cincinnati Park Patrolman, James Depenbrock, drove his marked, park police vehicle into Mt. Storm Park, Cincinnati, Ohio where, in a rectangular parking lot, he found a large 'U-Haul van type' truck with the rear sliding door open approximately one (1) foot from the truck bed.

"At this time there was in full force and effect Administrative Resolution 17 of The Board of Park Commissioners of the City of Cincinnati enacted pursuant to Revised Code of Ohio, Section 755.07, to-wit:

" 'Except by written permission of said Board, no person shall give, receive or participate in automobile driver training: nor dust, wash or in any way clean any automobile or other vehicle: nor take a truck or other business vehicle of any kind over or within park property.'

Alighting from his cruiser, Patrolman Depenbrock was only able to see white tennis shoes worn by a person in the truck, but, as he reached the rear thereof, the rear sliding door was completely raised by the occupant allowing this officer to see a crate in the truck, with its top and one side removed, containing a partially broken plaster statue. Knives, guns, vases, a hammer and other tools and a suitcase were on the floor of the truck near the crate.

Protruding from a portion of the broken statue, Officer Depenbrock testified:

> " 'They were, from my position on the ground, from which I could see, just the rounded edges of the packets. They were white and I would say they were 2″ or 3″ thick.'

This officer further conceded that he had never before seen such a substance as the packets just described, but which he thought to be some type of narcotics."

The officer thereupon ordered appellant, who had left the van, back into it and entered the van himself. He inspected the contents more closely and then told appellant he was under arrest. Subsequent chemical analysis indicated that the contents of the packets were raw hashish.

The Fourth Amendment, of course makes provision for searches and seizures on judicially issued warrants based on probable cause. It prohibits "unreasonable searches and seizures." In instances where warrants cannot be obtained or there are "exigent" circumstances which excuse obtaining them, the Supreme Court of the United States has held that searches and seizures without warrant must be on probable cause as known to the arresting officer at the moment of search or seizure. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

█ Like the District Judge, we are of the opinion that while the park policeman was looking in the truck, and before he interfered with appellant Lederer's freedom in any way, he had probable cause to believe the narcotics laws were being violated. The subsequent seizure was justified by what the officer had in "plain view." Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

We feel that any police officer who discovered somebody breaking up a piece of statuary in a rented trailer in the nighttime in a public park, with weapons lying near by, and saw that the party who was breaking up the statuary had arrived at a point where a number of two to three inch packets previously hidden in the plaster of the statuary could be seen, would have been notably lacking in common sense if he had not deduced that the statute had been used for illegal transportation of a contraband substance and that in all probability the substance would prove to be narcotics. *See* United States v. Baxter, 361 F.2d 116 (6th Cir.), cert. denied, 385 U.S. 834, 87 S.Ct. 79, 17 L.Ed.2d 69 (1966).

The impossibility of following search warrant procedures under the facts of this case is obvious. So is the hazard that the evidence of the crime would have been rapidly removed from the scene unless the police officer acted with dispatch. Such considerations have provided an historic differentiation between search and seizure cases involving houses and those involving moving vehicles.

As long ago as 1925 the Supreme Court said:

> "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

> "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding

liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use of the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise." Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).

As is obvious from what has been said earlier, we believe that the officer in this case did have probable cause to believe the van contained "contraband or illegal merchandise," as of the moment he determined upon the search and seizure.

■ The last issue in this case which we feel needs specific comment arises from a portion of the cross-examination of the police officer at the state court trial:

"Question: For what crime did you arrest him?

Answer: I suspected that the substance was some type of narcotics.

Question: You arrested this man then on your suspicion, is that correct?

Answer: Yes."

As to this issue, we accept fully Judge Porter's decision and reasoning:

"[W]e have not overlooked the fact that petitioner places considerable reliance upon Officer Depenbrock's testimony to the effect that he arrested petitioner on suspicion. As we stated earlier, suspicion does not suffice as a basis to arrest. Of course, in certain situations there is a nebulous line between suspicion and probable cause, but it is recognized that the ultimate determination as to the existence or non-existence of probable cause always rests with the courts. In other words, based upon the facts within his personal knowledge, what an officer might say was his suspicion might well be ample, when considered by a judge, to fulfill the probable cause standard. The point is that the controlling test is not dependent upon how the particular officer describes his feelings or the choice of words which he may select. After all, police officers, in testifying, are only expected to honestly relate the facts as they transpired, and we do not expect them to be legal linguists who express themselves in terms of legal jargon, such as 'probable cause,' 'reasonable grounds to believe,' etc. Instead, as stated above, the controlling test is based upon the facts possessed by the officer as applied, by a judge, against the hypothetical reasonable man standard (i. e., whether the facts and circumstances within the officer's knowledge are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed).

"In short, because Officer Depenbrock answered 'Yes' in response to the question: 'You arrested this man then on your suspicion, is that correct?' is not determinative of the matter. What is decisive is, as we in the exercise of our judicial responsibilities have held above, that when Officer Depenbrock entered the rear of the truck he possessed facts which would have warranted a reasonable man in believing that a crime had been or was being committed."

For these reasons and those set out more fully in the District Judge's opinion, dated May 13, 1970, the judgment of the District Court is affirmed.