UNITED STATES of America, Plaintiff-Appellee,

v.

Jerry Bradford COX, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Doss FOREMAN, Jr., Defendant-Appellee.

UNITED STATES of America, Plaintiff-Appellee,

v.

Maurice ROSE, Defendant-Appellee.

Nos. 71–1961 to 71–1963.

United States Court of Appeals, Sixth Circuit.

July 18, 1972.

Allen D. Tucker, Kalamazoo, Mich. (Court-appointed), on brief for defendant-appellant Cox.

Joseph J. Jerkins, Kalamazoo, Mich. (Court-appointed), on brief for Doss Foreman, Jr.

Edward J. Hackett, Battle Creek, Mich. (Court-appointed), on brief for Maurice Rose.

Robert C. Greene, Asst. U. S. Atty., for plaintiff-appellee; John Milanowski, U. S. Atty., Grand Rapids, Mich., on brief.

Before WEICK and MILLER, Circuit Judges, and RUBIN, District Judge.*

CARL B. RUBIN, District Judge.

The three defendants were arrested following a warrantless search of their automobile and charged with the crime of armed robbery. They filed motions to suppress the seized evidence and after these were overruled by the trial judge, the defendants pled guilty to the charge of possession of stolen property. These pleas were made with reservation of defendants' right to appeal from the trial judge's denial of their motion to suppress. This reservation was consented to by the United States Attorney.

The record establishes the following facts. On the evening of January 8, 1971, the First National Bank & Trust Company located in Battle Creek, Michigan, was robbed of approximately $3,000.00. A series of police bulletins based on eye witness testimony were broadcast over the police radio. The bulletin established that the robbery had been committed by two negro males, both approximately six feet in height and weighing between 160 and 170 pounds and that they had made their escape in an automobile, possibly a 1966 maroon Toronado. These bulletins were heard by Officers McCandlish and Brant of the Emmett Township Police Department.

Approximately one and one-half hours after the robbery had been committed, the officers observed a late model blue and white Toronado automobile parked in a gas station. The two males standing around the car matched the description the officers had received over the radio broadcast. The gas station in which Officers McCandlish and Brant observed these facts was located approximately seven miles from the scene of the robbery. The automobile containing three men, one of whom had been inside the gas station at the time of the initial police observation, drove out of the station and the officers followed it. The automobile was stopped approximately one and one-half miles from the gas station after its driver had momentarily failed to heed the blinking lights and sirens of the police car. An individual later identified as defendant Foreman got out of the Toronado and Officer McCandlish requested to see his driver's license. The defendant told the officer that he did not have one in his possession but did produce some identification when pressed to do so by McCandlish.

McCandlish then asked Foreman for permission to search the automobile. He explained that a local bank had been robbed and the two men sitting in the back seat of Foreman's car matched the description that had been broadcast over the police radio. At first Foreman refused to give such permission but after conferring with the other two occupants of the car, told McCandlish that it was permissible for him to engage in the requested search. By this time other officers from other police jurisdictions had arrived at the scene. McCandlish and one Officer McWilliams, of the Penfield Police Department, searched the car and discovered a bluish-green pillowcase hidden in an armrest in the middle of the front seat and which contained a large sum of money. At this point Foreman and the other two occupants of the car, defendants Cox and Rose, were placed under arrest and advised of their rights.[1]

---

* Hon. Carl B. Rubin, United States District Judge for Southern Ohio, sitting by designation.

1. The authority under Michigan law to make the warrantless arrest was conferred upon the officers by M.C.L.A. § 764.15 (M.S.A. § 28.874) which provides in material part as follows:

Any peace officer may, without a warrant, arrest a person—(a) for the commission of any felony or misdemeanor committed in his presence; (b) when such person has committed a felony although not in the presence of the officer; (c) when the felony has in fact been committed and he has reasonable cause to believe that such person has committed it; (d) when he has a reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has

There are two issues for resolution before the Court. We must initially consider whether the procedure whereby defendants pled guilty but reserved certain rights for appeal is violative of either public or judicial policy. If we decide that this case is properly before us, we must then determine whether the warrantless search of defendants' automobile violated their Fourth Amendment rights.

## I

The Court must first consider, as a threshold question of jurisdiction and as a matter of policy, the procedure by which this case was brought before us. After the district court overruled motions to suppress, defendants entered pleas of guilty to the charge of possession of stolen property. These pleas were made with the express reservation of defendants' rights to perfect an appeal from the question of search and seizure law which had, of course, been decided against them by the trial judge. The United States Attorney for the Western District of Michigan assented to defendants' conditional pleas. At the oral argument in this cause his representative announced that said office intends to employ this procedure in all similar cases. The presumption appears to be that in cases of this type the admission, over objection to suppress or to return, of either physical or confessional evidence is for all intents dispositive of the case as a whole.

The procedure employed in the case at bar is at variance with the general, well-settled rule that a guilty plea "normally rests on the defendant's own admission in open court that he has committed the acts with which he is charged," see McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.

2d 763 (1970); Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L. Ed.2d 747 (1970); McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). When made by the accused, knowingly, willingly and with the benefit of competent counsel, a plea of guilty waives all non-jurisdictional defects. Austin v. Perini 434 F.2d 752 (6th Cir. 1970); Humphries v. Green, 397 F.2d 67 (6th Cir. 1968); Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967); McCord v. Henderson, 384 F.2d 135 (6th Cir. 1967); Crockett v. Haskins, 372 F.2d 475 (6th Cir. 1966); also see, Jenkins v. Beto, 442 F.2d 655 (5th Cir. 1971); Nobles v. Beto, 439 F.2d 1001 (5th Cir. 1971); United States v. Rook, 424 F.2d 403 (7th Cir. 1970), cert. den. 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970); United States v. McElya, 142 U.S.App.D.C. 38, 439 F.2d 548 (1970); Abram v. United States, 398 F.2d 350 (3rd Cir. 1968); United States ex rel. Rogers v. Warden, 381 F.2d 209 (2d Cir. 1967); Runge v. United States, 427 F.2d 122 (10th Cir. 1970); Seybold v. Cady, 431 F.2d 683 (7th Cir. 1970). The jurisdictional exception to the general rule has been limited to cases in which the accused is challenging the constitutionality of the statute, usually on Fifth Amendment grounds, under which he is charged. See, Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

In Haynes v. United States, *supra*, the defendant was charged with violations of the National Firearms Act. He claimed that certain provisions of 26 U.S.C. § 5851 violated his privilege against self-incrimination, as guaranteed by the Fifth Amendment. After his motion to dismiss the charge on this ground was denied by the district court, the accused pled guilty and appealed. The Su-

committed it; (e) when he has received positive information by written, telegraphic, teletypic, telephonic, radio or other authoritative source that any other officer holds a warrant for such arrest; (f) when he has received such positive information broadcast from any

recognized police or other governmental radio station, or teletype, as may afford him reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it.

preme Court, in reversing an affirmance of conviction by the Fifth Circuit noted that "[p]etitioner's plea of guilty did not, of course, waive his previous claim of the constitutional privilege. See, e. g., United States v. Ury, 106 F.2d 28 (2d Cir. 1939)" 390 U.S. 85, 87, at n. 2, 88 S.Ct. 722, 725.

In *Ury, supra,* relied on by the Court in *Haynes,* the defendant was charged with violation of a provision of the Tariff Act of 1930. He demurred on the grounds that the statute was unconstitutional and after the district court overruled the demurrer, pled guilty and thereafter filed a motion in arrest of judgment raising the same points he had raised in his demurrer. The Second Circuit held: "The questions presented put in issue whether the statute is constitutional and whether the information charged a crime. The plea of guilty did not foreclose the appellant from the review he now seeks."

And in United States v. Gonzalez-Parra, 438 F.2d 694 (5th Cir. 1971), the appellant challenged the constitutionality of an immigration law, 8 U.S.C. § 1326. Citing footnote 2 in *Haynes, supra,* the Fifth Circuit held: "The Supreme Court has declared, however, that where defendant moves to dismiss an indictment on the ground that the statute he is charged with having violated is unconstitutional, and the trial judge denies the motion to dismiss, the defendant may plead guilty and yet preserve the constitutional issue for appeal." See, *accord,* Corwin v. United States, 423 F.2d 33 (9th Cir. 1970), cert. den. 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970); Burton v. United States, 414 F.2d 261, 262 (5th Cir. 1969); Askew v. State of Alabama, 398 F.2d 825 (5th Cir. 1968).

These general rules are well summarized in 1 Wright, Federal Practice and Procedure: Criminal § 175b, as follows:

The entry of a plea of guilty has the effect of admitting all material facts alleged in the charge. No further proof of the crime is required . . . The plea is not merely evidence for the government. It is a formal criminal pleading, waiving a trial and a defense, and leaving the court nothing to do but to impose sentence and enter judgment.

A defendant who has pleaded guilty is not barred from claiming that the indictment or information failed to state an offense, or that the statute under which he was charged is unconstitutional, or that the pleading showed on its face that the prosecution was barred by the statute of limitations. *The plea of guilty does waive, however, all nonjurisdictional defects in the proceeding. In particular, it bars any claim that the prosecution obtained evidence unlawfully,* or that the defendant was illegally detained, or that the prosecution constituted double jeopardy. (footnotes omitted and emphasis supplied).

See, Hughes v. United States, 371 F.2d 694 (8th Cir. 1967); Hoffman v. United States, 327 F.2d 489 (9th Cir. 1964); Thomas v. United States, 290 F.2d 696 (9th Cir. 1961), cert. den. 368 U.S. 964, 82 S.Ct. 446, 7 L.Ed.2d 401 (1962).

■ It would appear, therefore, that the *Haynes* rule is of limited applicability and is constricted to a narrow class of constitutional questions. It is applicable only where the jurisdiction of the trial court to proceed on the criminal charges is directly placed in question. The *Haynes* rule does not apply in cases where a guilty plea has been entered despite the presence of non-jurisdictional constitutional questions, usually arising out of the Fourth and Fifth Amendments.

This is not to say that there is not substantial support for extending the Haynes rule to most guilty plea situations.[2] However, despite the existence

2. The general rule can be altered, for example, through the creation of a special statutory exception. Section 813–c of the New York Code of Criminal Procedure is such an enactment. The section has been favorably reviewed and held applicable

of that respectable authority, we decline to adopt as a rule in the Sixth Circuit the procedure allowed by the district court in the instant case.

To the extent this procedure allows a defendant to plead guilty, contingent on his right to appeal on non-jurisdictional grounds from his own plea, it is not logically consistent and is against the trend of recent case authority. There is a fundamental and basic inconsistency between knowingly and intelligently entering a voluntary plea of guilty, and then appealing from the judgment entered on the basis of that plea.

There should no longer be any confusion since the "pleatrilogy"[3] about the significance that attaches to a plea of guilty. Justice White, writing for the majority in *Brady, supra,* wrote that:

> [A] guilty plea is a grave and solemn act to be accepted only with care and discernment . . . Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.

397 U.S. at 748, 90 S.Ct. at 1468. And Justice Douglas wrote in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 that a plea of guilty is "more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remaining but to give judgment and determine punishment. See Kercheval v. United States, 274 U.S. 220, 223 [47 S.Ct. 582, 71 L.Ed. 1009]." See, *accord,* McMann v. Richardson, *supra,* 397 U.S. at 766, 90 S.Ct. 1441;[4] McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed. 2d 418 (1969).

■■ It is also well established that a guilty plea is not rendered invalid because it represents a compromise by defendant, thrusts a difficult judgment upon him, or is motivated by fear of greater punishment. See *Brady, supra; McMann, supra;* Parker v. North Carolina, *supra;* North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). The State may properly encourage pleas of guilty either by being

in federal habeas proceedings arising out of New York State. See United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2d Cir. 1967); United States ex rel. Molloy v. Follette, 391 F.2d 231 (2d Cir. 1968). It has been suggested that this procedure can only be authorized by specific statute. See McMann v. Richardson, *supra,* 397 U.S. at 770, n. 13, 90 S.Ct. 1441. However, there is some suggestion that the procedure could be adopted by rule. See 1 Wright, *supra,* at 381–382; American Bar Association Project on Standards for Criminal Justice, Criminal Appeals, § 1.3 and commentary, at 28, 31–32 (tentative draft 1969).

3. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

4. There is a strong suggestion in *McMann, supra,* but not an actual holding, that the procedure now under consideration is improper unless specifically authorized by

statute. After reiterating the principle discussed in *Brady* that a "conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged," Justice White noted that the admission "may not be compelled, and *since the plea is also a waiver of trial—and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant*—it must be an intelligent act . . . " within the meaning of *Brady, supra.* See 397 U.S. at 766, 90 S.Ct. 1441, 1446. [emphasis supplied]

We note that the defendants have not claimed their right to reserve certain rights on appeal under either a Michigan or United States statute comparable to Section 813–c, discussed in United States ex rel. Rogers v. Warden, *supra.* We further note that the defendants do not contend that their pleas were not intelligently made and entered "with sufficient awareness of the relevant circumstances and likely consequences." See, *Brady, supra,* 397 U.S. at 748, 90 S.Ct. 1463, 1469.

more lenient to those who enter such pleas, see *Brady, supra,* 397 U.S. at 750–753, 90 S.Ct. 1463, or by increasing the risks of punishment on those who do not, see North Carolina v. Alford, *supra,* 400 U.S. at 37, 91 S.Ct. 160; Parker v. North Carolina, *supra,* 397 U.S. at 795–796, 90 S.Ct. 1458. The constitutional standard remains, in Justice Harlan's words, "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, *supra,* 400 U.S. at 31, 91 S.Ct. at 164 also see Boykin v. Alabama, *supra,* 395 U.S. at 242, 89 S.Ct. 1709; Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

The guilty plea has a central role in the criminal process. See *Brady, supra,* 397 U.S. at 752 n. 10, 90 S.Ct. 1463. Approximately 90% of all criminal proceedings commenced in the United States district courts are settled by the entrance of a plea of guilty or one of *nolo contendere.* See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Douglas, J., concurring, at n. 2). Plea bargaining is now openly recognized as an important prosecutorial tool in obtaining these pleas which are indispensable to the smooth functioning of the existing system of criminal justice.[5] The Supreme Court held in *Santobello, supra,* that where "a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled," and perhaps even be specifically performed.

The defendants at bar had every right to and did in fact plead not guilty. After their motion to suppress was overruled they were confronted by one of the hard choices of which our criminal process is replete. See McGautha v. California, *supra,* 402 U.S. at 213, 91 S.Ct. 1454. They could go to trial on charges of armed robbery and put the government to its burden of proving their guilt, see McMann v. Richardson, *supra,* 397 U.S. at 767, 90 S.Ct. 1441; United States v. Doyle, 348 F.2d 715 (2nd Cir. 1965), or they were free to bargain with the prosecutor and offer to plead guilty to a reduced charge or be promised leniency.

In intelligently weighing their options, the defendants chose to plead guilty to reduced charges. Their mental calculus was undoubtedly affected by the district court's ruling on the motion to suppress and by their estimation of the likelihood of that ruling being set aside on appeal.[6]

---

5. The policies underlying plea bargaining were summarized by Chief Justice Burger who, in writing for the majority in *Santobello, supra,* commented:

    Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See Brady v. United States, 397 U.S. 742, 751–752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

6. Choices of this kind are usually based upon speculations and vagaries. Given the nature of our criminal process this is inevitable. The criminal defendant rarely operates from a position of certitude but this fact alone does not invalidate an otherwise proper guilty plea. The Court held in Brady v. United States that:

    Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like those frequently presented imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later at-

If they and their counsel believed the chances of reversal to be high, we fail to understand what was to be gained by pleading guilty. The plea of not guilty should have been maintained and the government put to its burden.

However, the district court allowed defendants the best of two worlds. They were allowed to plead guilty to reduced charges, while reserving their right to appeal as if they had maintained their innocence through trial. They therefore obtained from a no doubt harried prosecutor, in consideration of their plea, an advantage they may not have received had they gone to trial on their pleas of guilty to charges of armed robbery. Under *Santobello, supra,* the defendants have the right to hold the prosecutor to his side of the bargain. It strains logical consistency and legal definition to allow appeal from such situations. The defendants clearly want to have their cake while preserving their rights to eat it at some future date.

In our opinion, McMann v. Richardson, *supra,* is authority for disallowing the procedure followed in this case. In *McMann, supra,* several defendants, upon advice of counsel, pled guilty in state court to felony charges, after being advised by their attorneys that coerced confessions would probably be admissible in evidence against them. Confessions obtained under similar circumstances were subsequently ruled unconstitutionally obtained and hence inadmissible in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and defendants sought habeas corpus relief. The Supreme Court, per Justice White, in reversing the granting of the writs by the Second Circuit, held in material part as follows:

> Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him. For the defendant who considers his confession involuntary and hence unusable against him at trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding and win acquittal, however guilty he might be. 397 U.S. at 768, 90 S.Ct. at 1447.

Also see, 397 U.S. at 769–771, 90 S.Ct. 1441.[7]

Quite apart from the questions of legal consistency discussed above, we are also troubled by certain legal assumptions which have been made by the parties to this procedure. They appear to assume that a reviewing court can properly look at one legal issue, even one of constitutional dimensions, in isolation from the other facets of a case. This, of course, was a characteristic of the genius of the early common law but is not true of our modern system of jurisprudence. Under classical common law notions, the trial court always presented a single, finite issue, either factual or legal, to the reviewing court; that single issue, many times of artificial significance because

---

tack if the defendant did not correctly assess every relevant factor entering into his decision. 397 U.S. at 756–757, 90 S.Ct. at 1473.

See, *accord,* McMann v. Richardson, *supra,* 397 U.S. at 769–771, 90 S.Ct. 1441; Shakespeare, Hamlet, V, ii (in situations such as these: " . . . we defy augury . . . " at 1.240)

There is a requirement that a plea of guilty be based "on reasonably competent advice [of counsel]." See, McMann v. Richardson, *supra,* 397 U.S. at 770, 90 S. Ct. 1441; Austin v. Perini, *supra,* 434

F.2d at 753. In the absence of anything in the record which casts any doubt on this issue, we hereby do so find.

7. We do not consider significant that *Mc-mann* presented questions of federal-state comity which are presented in habeas corpus proceedings. Nor do we think that a distinction should be drawn between the Fifth Amendment questions which were before the Court in *McMann, supra,* and the Fourth Amendment issues which are presently before us.

of the peculiarities of common law pleading, would be dispositive of the entire case.

The customary procedure for appellate review in this country is quite different. The reviewing court has a full record before it and not all "trial errors which violate the Constitution automatically call for reversal." Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). At least in regard to Sixth Amendment situations under the modified "harmless error" test, recently enunciated in Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed. 2d 340 (1972), "unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." Also see, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In what is a throwback to common law practices, resembling in some ways the situation created by a demurrer, we are presented in the case at bar with a naked question of law which could very well be of artificial and inflated importance. Since there was no trial, the only record before us is the hearing on the motion to suppress. We are left to conjecture whether the prosecution had additional evidence to present against the defendants. There is at least an inference that can be drawn from the limited record before us that since the arresting officers received a description of the defendants and their automobile over the police radio, there were some eyewitnesses to the crime itself. We are left to speculate that perhaps the prosecutor had sufficient additional evidence that he would not have introduced the evidence seized during the search of defendants' automobile and which the district judge ruled could be admitted into evidence. A ruling on the right to intro-

duce evidence is, after all, not the same thing as actually introducing the evidence itself. In short, it is entirely possible that the constitutional question now before this panel could have been avoided by invocation of the doctrine of harmless error, or never presented at all because of the trial tactics adopted by the prosecutor.

Of course it is conceivable that in some cases the only evidence available to the prosecutor will be subject to a motion to suppress.[8] Even in such a situation, we can see no reason to allow the defendant to plead guilty following an unfavorable ruling on a motion to suppress and reserve his right to appeal. A trial of such limited evidence would be short and relatively easy to try. We can think of no compelling policy ground for altering generally accepted notions of the meaning and significance of guilty pleas for this rather limited category of cases.

In sum, while we can see that the proposed procedure may ease the docket pressures confronting many district courts, we believe the disadvantages in terms of the internal consistency of our criminal process, the accuracy of appellate review, and conflict with the hoary doctrine of avoiding constitutional questions if possible, far outweigh the putative gains. Therefore the procedure of allowing appeal on non-jurisdictional grounds following intelligent and voluntary pleas of guilty will not be countenanced in the future in this Circuit.

**II**

It is now necessary for us to consider the effect of employing a procedure in the case at bar with which we have expressed considerable reservations. It appears that the defendants entered their pleas of guilty on the express condition that they would have an opportunity to present the Fourth Amendment question to this Court.

---

8. This present case could possibly be in this category of cases. The procedure employed here, however, as it skirted the development of a full record, prevents us from knowing this definitively.

■ Under the circumstances presented in this case, our refusal to honor the agreement entered into between the defendants and the prosecutor and accepted by the district court, would constitute a failure of consideration within the plea bargaining process. See, Santobello v. New York, *supra*. Such a failure would require this court to vacate defendants' pleas on the grounds that they did not constitute knowing and intelligent voluntary waivers of constitutional rights made with sufficient awareness of the relevant circumstances and likely consequences. See Rule 11, Fed. R.Crim.P.; Brady v. United States, *supra*, 397 U.S. at 748, 90 S.Ct. 1463; Parker v. North Carolina, *supra;* also see Boykin v. Alabama, *supra*; McCarthy v. United States, *supra;* Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Machibroda v. United States, *supra;* Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In striving to avoid that situation, and in view of the peculiar circumstances of this case, we will honor the agreement entered into between the parties at the time defendants entered their pleas of guilty. See United States v. Doyle, *supra*; Jaben v. United States, 333 F.2d 535 (8th Cir. 1965), aff'd 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). We therefore will proceed to consider the merits of defendants' appeal.

### III

■ The defendants contend that the warrantless search of their car was illegal under the Fourth Amendment. The district judge did not agree with this proposition and neither do we. The officers had probable cause to believe that the defendant had committed a crime and that the search of the automobile on a highway was justified as incident to a lawful arrest. Coolidge v. New Hampshire, 403 U.S. 443, 458–464, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Johnson, 403 F.2d 1002 (6th Cir. 1968). Both officers testified that to their own observation the defendants resembled the descriptions of the alleged bank robbers that had been broadcast over the police radio. Even though there were minor discrepancies between the broadcast descriptions and the car and defendants actually stopped, this did not diminish the probable cause that allowed the officers to lawfully stop and search the car in question. See, Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); United States v. Mitchell, 457 F.2d 513 (6th Cir., 1972); United States v. Smith, 457 F.2d 368 (6th Cir., 1972); United States ex rel. Williams v. LaVallee, 415 F.2d 643 (2d Cir. 1969), cert. den. Williams v. Follette, 397 U.S. 997, 90 S.Ct. 1139, 25 L.Ed.2d 406 (1970); United States v. Fallis, 414 F.2d 772 (9th Cir. 1969). For the reasons stated in Lederer v. Tehan, 441 F.2d 295, 298 (6th Cir. 1971), the defendants' efforts to establish that the arresting officers had a mere suspicion and not probable cause are without merit. Even assuming *arguendo* that there is some merit in defendants' contentions, the police certainly had sufficient suspicion to investigate the automobile in question. Having stopped the car incident to a lawful police investigation, the resulting search, based upon uncontroverted evidence in the record, was assented to by the defendants. They thereby waived any Fourth Amendment rights they may have had. See, Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Coolidge v. New Hampshire, *supra*, 403 U.S. at 487–490, 91 S.Ct. 2022; United States v. Nelson et al., 459 F.2d 884 (6th Cir. 1972).

■ Since the police had probable cause to search defendants' automobile, even in the absence of their consent, it is of no constitutional significance that the warnings required by

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were not given until after the consent to search was obtained. In any event *Miranda* does not require that specific Fourth Amendment warnings be extended in situations as at bar. See United States v. Goosbey, 419 F.2d 818 (6th Cir. 1970); White v. United States, 444 F.2d 724 (10th Cir. 1971); United States v. Noa, 443 F.2d 144 (9th Cir. 1971); United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3rd Cir. 1970); Gorman v. United States, 380 F.2d 158 (1st Cir. 1967).

The judgment of the district court is therefore affirmed.